The Washington County Grand Jury, during the July, 1991 term, in vacation, returned an indictment against Larry Craig for the murder of Isaac Hardy. Trial was held and the jury returned a verdict on February 11, 1992, finding him guilty of manslaughter. He was sentenced to serve a term of twenty (20) years in the custody of the MDOC. The trial court denied his motion for a new trial on February 28, 1992.
The confrontation resulting in the death of Isaac Hardy happened on the evening of August 2, 1991, at Fred's Stop and Shop in Mound Bayou, Mississippi. Craig was employed at Fred's, but he testified that he entered the store on that evening only to use the telephone. Gregory Esters testified that earlier in the evening Craig stated, "someone is going to die when [I come] back." Esters said that Craig returned and initiated a scuffle by "pointing his finger" in Hardy's face. Craig, at five feet five inches (5' 5") and approximately 130 pounds, was a significantly smaller man than Hardy.
The two men exchanged words in the store, and, according to Craig, Hardy picked him up by both of his arms and rammed him out the door of the store. Michael Vicks said that Hardy forced the defendant outside and "politely took him out." According to Craig, this included being slammed into a post outside the store. After the fight, Esters noticed that an outside post had been knocked down.
Before Hardy turned to walk back into the store, he apparently made some comment to the effect that Craig was too small to fight. All of the State's witnesses maintained that Craig stabbed Hardy in the back as he attempted to walk back into the store. Craig said that Hardy was merely turned at an angle when he stabbed him. The victim, after being stabbed in the back, spun around only to be stabbed again in the chest by Craig. Isaac Hardy subsequently died of a puncture wound to the left chest.
Craig appeals his conviction asserting two separate, but related, errors regarding jury instructions: (1) the trial court committed reversible error when it granted the prosecution's Instruction S-5 which substantively instructed the jury that the defendant had a duty to flee the victim's attack, and (2) the trial court committed reversible error when it refused to instruct the jury that the defendant had a right to stand his ground without waiving his right to self-defense, as long as he was in a place he had a right to be and was not the provoker or aggressor of the combat.
Instruction S-5, which was submitted to the jury over Craig's objection, reads as follows:
 The Court instructs the Jury that a person may not use more force than reasonably appears necessary to save his life or protect himself from great bodily harm. Where a person repels an assault with a deadly weapon, he acts at his own peril and the question of whether he was justified in using the weapon is for determination by a jury.
 The Court further instructs the jury that the law tolerates no justification, and accepts no excuse for the destruction of human life, on the plea of self-defense, except that the death of the adversary was necessary, or apparently so, to save his own life, or his person from greatly bodily injury, and there shall be imminent danger of such design being accomplished. The danger to life, or of great personal injury, must be imminent, present at the time of the killing, real or apparent, and so urgent that there is no reasonable mode of escape except to take life. The term "apparent," as in apparent "danger," means such overt, actual demonstration, by conduct and acts of a design to take life, or *Page 1300 
do some great personal injury, as would make the killing apparently necessary to self preservation.
 One who leaves an altercation, arms himself, and returns with the intent to and does use his weapon on the other party can not claim self-defense.
(emphasis added). Craig claims that the court committed reversible error in granting the above instruction because it improperly instructed the jury that he was under a duty to flee Hardy's aggression. The law of this state allows a defendant to claim self-defense even if the opportunity to flee and avoid the danger existed provided that the appropriate circumstances existed at the time. Haynes v. State, 451 So.2d 227, 229 (Miss. 1984). In Long v. State, 52 Miss. 23, 34 (1876), this Court explained the circumstances under which an individual may stand his ground and still be entitled to claim self-defense:
 Flight is a mode of escaping danger to which a party is not bound to resort, so long as he is in a place where he has a right to be, and is neither engaged in an unlawful, nor the provoker of, nor the aggressor in, the combat. In such case he may stand his ground and resist force by force, taking care that his resistance be not disproportioned to the attack.
The State first contends that the granted instruction S-5 did not suggest that Craig had a duty to retreat. We find to the contrary. Before the jury could accept the theory of self-defense, they were required to find that the danger was so urgent that the defendant had no "reasonable mode of escape." This deprived the defendant of the right to claim self-defense if he could have avoided the threat to his safety by escaping. Such an instruction is not supported by the law of this state. This error was not cured by any other self-defense instruction ultimately granted by the trial court as no other instruction touched upon the subject of flight. See Ivey v. State,154 Miss. 60, 73, 119 So. 507 (1928) (so long as the instructions, taken as a whole, correctly state the law, the error will not require reversal). The trial court erred in submitting Instruction S-5 to the jury, but whether or not the error was reversible is conditioned upon the existence of an evidentiary basis supporting the defendant's right to stand his ground.
Long provides that when a person is (1) in a place he has a right to be, and (2) is not the aggressor, "he may resist force by force, taking care that his resistance be not disproportioned to the attack." Id. at 34. Craig was rightfully in Fred's Stop and Shop, as it was a place of business open to the public. The state, however, strongly maintains that all of the evidence proved that Craig's claimed right to stand his ground during the fight did not exist because he was the provocateur and the aggressor in the confrontation. There was assuredly a violent situation occurring at Fred's on the evening in question. At the very least, an argument ensued between Craig and Hardy, and Craig was forcibly removed from the store. Evidence was presented to the jury showing that Hardy shoved Craig through the front door. There was also evidence that once outside, Hardy picked up Craig and slammed him against a post. Moreover, Craig testified that he had to do something to halt the attack because he feared that Hardy was about to turn back around and continue the beating. Hardy was considerably larger than Craig and apparently had the capability of doing substantial harm with his bare hands. When asked the reason he used the knife, Craig responded: "To protect myself. Get this man off me — you know — this man is trying to hurt me. I couldn't do nothing with him." At the least, it is arguable whether Hardy remained the aggressor throughout the confrontation or whether the incident was over when Hardy turned away from Craig. For this reason, we must conclude that there was an evidentiary basis for the conclusion that Craig was rightfully standing his ground when he fatally wounded Hardy even though the evidence also showed that the victim's first wound was inflicted in his back. Consequently, the submission of Instruction S-5 to the jury commanding them to find the defendant's actions justifiable only in the absence of a reasonable means of escape was reversible error.
Craig also complains of the trial court's refusal to grant his requested instruction D-4. In Cook v. State, 467 So.2d 203 *Page 1301 
(Miss. 1985), this Court held that the trial court committed reversible error in failing to grant a jury instruction which read:
 You are instructed that while the danger which will justify the taking of another's life must be imminent, impending, and present, such danger need not be unavoidable except by killing in self defense. The Defendant, Clarence Edward Cook, need not have avoided the danger to his person presented by the deceased, Dudley Chandler, by flight. So long as the Defendant was in a place where he had the right to be and was neither the immediate provoker or aggressor, he may stand his ground without losing the right of self defense.
Id. at 209, n. 4 (emphasis added). We found that it was reversible error to deny this instruction because there was no evidence that Cook was the aggressor. In fact, the drunken victim approached Cook "brandishing the large section of a two-piece pool cue in a dark lounge." Id. at 204. In the case at hand, the trial court refused defendant's requested instruction D-4 which was, for all practical purposes, the exact instruction requested and denied in Cook. Craig's requested Instruction D-4 stated as follows:
 The Court instructs the Jury that while the danger which will justify the taking of an adversary's life must be imminent, impending and present, yet it need not be unavoidable except by slaying. A man need not avoid danger by flight; but so long as he is in a place where he has a right to be, and is himself in no unlawful enterprise, not the provoker or aggressor in the combat, he may stand his ground.
(emphasis added). While the facts of this case are not as compelling as the facts in Cook, there was nevertheless an evidentiary basis, as discussed supra, for the trial court to have granted this instruction. A defendant is entitled to present their theory of the case to the jury as long as there is some evidentiary basis, even if the evidence is insufficient or of doubtful credibility, "and even though the sole testimony in support of the defense is the defendant's own testimony." Welchv. State, 566 So.2d 680, 684 (Miss. 1990). The trial court's denial of defendant's requested instruction D-4 was reversible error as well. This cause is reversed and remanded to the trial court where the defendant will be afforded a new trial.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE, P.J., and BANKS and McRAE, JJ., concur.
BANKS, J., concurs with separate written opinion joined by HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and
SULLIVAN and McRAE, JJ.
SMITH, J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr., J.
PITTMAN, J., not participating.