746 So.2d 927 (1999)
Charles DENSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01290 COA.
Court of Appeals of Mississippi.
March 9, 1999.
Rehearing Denied June 8, 1999.
*928 Thomas Fortner, Brenda Jackson, Robert Ryan, Jackson, Attorneys for Appellant.
Office of Attorney General, Jeffrey A. Klingfuss, Attorneys for Appellee.
EN BANC.
COLEMAN, J., for the Court:
¶ 1. A jury in the Circuit Court of the First Judicial District of Hinds County *929 found the appellant, Charles Denson, guilty of aggravated assault upon Vanessa Brown, which he accomplished by repeatedly striking her about the head with a pistol as she sat in the driver's seat of her car, and the trial court sentenced Denson to serve a term of twenty years in the custody of the Mississippi Department of Corrections. In his appeal of the judgment of his conviction of aggravated assault and sentence, Denson presents for our review and resolution the following two issues, which we quote verbatim from his brief:
ISSUE ONE:
THE TRIAL COURT COMMITTED PLAIN REVERSIBLE ERROR BY RESTRICTING DENSON'S ABILITY TO PRESENT A PROPER DEFENSE TO THE CHARGE CONTAINED IN THE INDICTMENT AND AS A RESULT, DENIED HIM A FUNDAMENTALLY FAIR TRIAL.
ISSUE TWO:
DENSON WAS DENIED A FUNDAMENTALLY FAIR TRIAL AS A RESULT OF THE NUMEROUS IMPROPER REMARKS BY THE PROSECUTION DURING THE CLOSING ARGUMENT PHASE OF THE TRIAL AS EACH SUCH INSTANCE OF PROSECUTORIAL MISCONDUCT, STANDING ALONE, SUFFICIENTLY DENIED DENSON A FUNDAMENTALLY FAIR TRIAL.
We resolve both issues adversely to Denson and affirm the judgment and sentence of the trial court.

I. FACTS
¶ 2. This recitation of the facts is consistent with the evidence which supports the jury's verdict that Denson was guilty of aggravated assault. On the evening of June 23, 1995, Vanessa Brown and her friend Janice Young went to the 500 Club at the corner of Sears and Ridgeway in the city of Jackson. Shortly after midnight on June 24, Brown and Young left the 500 Club, but Janice Young, who had ridden to the club with Brown in Brown's car, got into a car which belonged to a male companion whom she had met in the 500 Club. Brown got into her car to return to her mother's home in Jackson. Before Brown could close the door of her car, Denson, who had approached Brown's car from the rear, grabbed the driver's-side door before Brown could close it, and began to beat Brown about her head and face with a pistol. Brown asked Denson why he was doing this to her, and she begged him to stop beating her. Brown threw up her arm as she sat inside her car in an attempt to deflect Denson's blows with the pistol.
¶ 3. While Denson was pistol-whipping Brown inside her car, Young got out of her male companion's car and went inside the club, where she telephoned the police. Young stayed with Brown until the ambulance transported Brown to the University of Mississippi Medical Center (UMC). Brown testified that as the result of Denson's repeatedly striking her with the pistol, "her skull was opened ... in two places" and that the bones in her arm "were cracked in two places." UMC personnel closed the wounds on her skull and chin with stitches, the exact number of which Brown could not remember, and placed something like a cast on her arm. Brown remained at UMC under observation until about 11:00 a.m. on June 24.
¶ 4. As soon as UMC discharged Brown that morning, Janice Young drove Brown from UMC to Precinct Three of the Jackson Police Department, where police officer Linda Lewis, a twenty-year employee of the Jackson police force, prepared a report of the incident between Brown and Denson earlier that same morning. Denson was subsequently arrested and incarcerated to await trial on the charge of aggravated assault on Vanessa Brown.

II. TRIAL
¶ 5. In the following order, the State called Vanessa Brown, Janice Young, and *930 Police Officer Linda Lewis as its witnesses against Denson. Vanessa Brown testified that Denson and she had engaged in a relationship for the past five years, and that she had given birth to Denson's daughter, who was then nearly five years old. Brown also testified that she had ended her relationship with Denson two or three weeks before June 24, 1995, when Denson attacked her in her car outside the 500 Club. Brown explained that when she and Young were leaving the club between 12:30 and 1:00 a.m., Janice Young told her to lock her car door. Brown said that she did not see Denson approach her car, but that he began beating her before she could close and lock the door of her car.
¶ 6. During cross-examination, Denson's counsel asked Brown, "And you had been using marijuana also, hadn't you?" The State objected to this question as being irrelevant and because the question was intended to "malign the witness." Denson's counsel replied that "it is for the purpose," but the trial court sustained the State's objection. Denson's counsel pursued the purpose of the question no farther. Brown had already admitted under her cross-examination that she had been drinking inside the club.
¶ 7. The State's second witness, Janice Young, related the incident as follows:
[Denson] grabbed the door and started beating [Brown] with a gun on her head, and he just kept beating her with the gun on her head. And I got out of the car I was in and went back in to call somebodycall the police and tried to get some help....
Young also noted that the gun "had some silver in it." She said that she heard Brown tell Denson to stop beating her and that Brown tried to protect herself by throwing up her hand. On cross-examination, Young also answered questions about her new male companion, who, she emphasized, did not want to give a statement to police or to get involved with the investigation and prosecution of this case. Young told the prosecution that she did not give the defense information about her companion because he refused to become involved.
¶ 8. The State's final witness, Officer Linda Lewis, testified that she had taken Vanessa Brown's report of the June 24 incident at precinct three in Jackson. She stated that Brown seemed to be in a lot of pain and required help walking. Lewis further testified that Brown had a large bandage around her head, a cast on her arm, and tape under her chin. She summarized the police report without objection and established that the incident occurred within the court's jurisdiction. Denson's counsel did not cross-examine Officer Lewis, and the State rested.
¶ 9. When the trial began, Denson's counsel had reserved making an opening statement until after the State had rested. After the State rested, defense counsel presented an opening statement, asserting that the evidence would show that Denson and Brown argued and that Brown sustained only minor injuries. Counsel also suggested that Denson could only be guilty of simple assault.
¶ 10. Charles Denson testified in his defense. He told the jury that his wife, Sharon Denson, and he had five children, four sons and one daughter, ranging in age from fifteen to nine years old. He testified that he had approached Brown outside the club to ask her if she had the clothes which he had left at Brown's mother's house, where he had been living for the previous three weeks until Brown broke off their relationship. Denson denied that he hit Brown with a gun, but claimed instead that he struck her only once with his hand. His explanation for Brown's injuries to her head was that she tried to lunge out of the car at him but failed to duck under the doorframe and thus struck her head so hard that she gashed it.
¶ 11. During cross-examination, Denson said that he had visited Brown about a week before June 24. Denson testified that Brown had gone to Denson's wife's house, where Denson was living, and spoke *931 to his wife about their recently terminated relationship. He explained that Brown's confronting his wife had upset him. Denson admitted that he knew Brown probably did not have the clothes he sought to get from her at the night club. Denson stated that he grabbed Brown's hands so that she would not hit him, but he added that he was not scared of her. He admitted that he pushed her back into the car and slapped her in the face as hard as he could. Denson claimed that Brown exited the car without assistance and ran into the club. During re-direct examination, Denson continued to maintain that he hit Brown only with his hand, never with a gun.
¶ 12. After the court instructed the jury, the State and Denson's counsel presented their closing arguments. The defense objected when the State mentioned the rights of the victim. The court overruled the defense's objection. The State suggested that the defense raised certain issues, including the lighting outside the club and whether Brown had been drinking, in order to confuse the jury. The defense objected to the State's mentioning Brown's fractured wrist claiming that no medical evidence to establish that her wrist had been injured had been adduced. The court overruled the objection.
¶ 13. The defense argued that the State had failed to prove its case. The court sustained the State's objection to defense's suggestion that the State should have produced a doctor to testify. After the defense speculated as to what a doctor would have said about Brown's injuries, the State objected to defense counsel's testifying to the jury. The court sustained the objection. Furthermore, the court sustained the same objection after the defense continued to argue that the State could have presented a doctor to testify regarding Brown's injuries.
¶ 14. The State offered a rebuttal to the defense's closing argument. The defense objected to the State's referring to Brown's fractured wrist, saying,
Your Honor, I am going to object to her repeatedly talking about this fracture or the break. It is not into evidence, and the State knows that, in fact, there is medical evidence that there was no fracture. They are outside the evidence....
¶ 15. The State responded to the defense objection by asserting that Denson's counsel was again testifying during the objections. The trial court overruled the defense's objection. The State asserted that the witnesses presented by the prosecution had told the truth and that the defendant had changed his story throughout his testimony. The State also recounted the evidence presented by both sides and asked the jury to find the defendant guilty of aggravated assault.

III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES

A. Denson's first issue
¶ 16. Because Denson states his first issue, which we quoted on page two of this opinion, in broad generalities, this Court must resort to his argument on his first issue to determine what the trial court did to restrict Denson's ability to present a proper defense to the charge of aggravated assault, for which he had been indicted. Because Denson failed to object to the trial court's evidentiary rulings, it was necessary for Denson to include the phrase, "plain reversible error," in his first issue. Only as "plain" error pursuant to Mississippi Rule of Evidence 103(d) would this Court be permitted to find reversible error in some aspects of Denson's first issue.

1. Standard of Review

¶ 17. In order to raise an error on appeal, Mississippi Rule of Evidence 103(a) requires that a contemporaneous objection on specific grounds must be made to the *932 admission of evidence by the trial court.[1] In Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss. 1994), the Mississippi Supreme Court stated the following rule:
This Court has stated that a trial judge cannot be put in error on a matter not presented to him for his decision. Mills v. Nichols, 467 So.2d 924, 931 (Miss. 1985). In addition, it is a well stated principle that issues not presented at trial cannot be raised on appeal. Parker v. Mississippi Game and Fish Commission, 555 So.2d 725, 730 (Miss.1989).
More recently, that court reiterated the frequently stated rule that no new issues may be raised on appeal in Wright v. White, 693 So.2d 898, 903 (¶ 6) (Miss.1997). See Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992) (reciting that appellant is not entitled to raise a new issue on appeal); Parker v. Game & Fish Comm'n, 555 So.2d 725, 730 (Miss.1989) (holding that trial judge will not be put in error on a matter which has not been presented to him); Mills v. Nichols, 467 So.2d 924, 931 (Miss.1985) (trial court will not be put in error on appeal for matter not presented to it for decision). Under this rule, we must decline to address some facets of Denson's first issue because no contemporaneous objection by Denson's counsel to the evidence appears in the trial record.
¶ 18. Another well-established rule of appellate procedure provides that claims must be decided upon the facts in the record rather than upon assertions in the parties' briefs. Parker v. Mississippi Game and Fish Commission, 555 So.2d 725, 730 (Miss.1989); Britt v. State, 520 So.2d 1377, 1379 (Miss.1988); Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973). The appellant bears the burden of ensuring that the record contains all information necessary for the reviewing court to understand the matters relied upon for reversal of the lower court's judgment. Shelton, 279 So.2d at 644; Willenbrock v. Brown, 239 So.2d 922, 924 (Miss.1970).
¶ 19. Although our jurisdiction provides wide latitude in probing matters affecting a witness's credibility, we emphasize that the matters explored must be relevant to the case. Green v. State, 631 So.2d 167, 173 (¶ 7) (Miss.1994). Determinations of relevance and admissibility of evidence rest within the discretion of the trial court. McGowan v. State, 706 So.2d 231, 243 (¶ 15) (Miss.1997); Johnson v. State, 666 So.2d 499, 503 (Miss.1995); Baine v. State, 606 So.2d 1076, 1078 (Miss. 1992); Johnston v. State, 567 So.2d 237, 238 (Miss.1990). This court will reverse a ruling only if the trial court has abused its discretion and if a substantial right of the party has been affected by the court's ruling on the evidentiary matter. Johnson, 666 So.2d at 503; Green v. State, 614 So.2d 926, 935 (Miss.1992); M.R.E. 103(a).

2. Analysis

¶ 20. Denson objects to the trial court's refusal to admit evidence of whether the victim in the present case had been drinking or smoking marijuana at the time of the assault. He quotes verbatim in his brief the following snippet of his counsel's cross-examination of Vanessa Brown:
Q. Now, you stated that you all had decided to break up before this incident approximately, what, week or two?
A. Ma'am?

*933 Q. How long had you broken up with Mr. Denson before this alleged incident?
A. Oh, about three weeks.
Q. Three weeks? Had you allyou have been together for five years and the relationship was off and on; is that right?
A. Yes.
Q. On this morning, you said it was around one o'clock in the morning that this incident occurred?
A. No, this happenedwhat incident?
Q. Where you are saying he beat you with the pistol?
A. That was about one o'clock, well, in the morning, yes.
Q. Had you been drinking? It was a club. You had been drinking; hadn't you?
A. Yes.
Q. And you had been using marijuana also; hadn't you?
ASSISTANT DISTRICT ATTORNEY: Object to this, Your Honor. It has nothing to do with this man beating her to death.
DEFENSE COUNSEL: Your Honor
THE COURT: Sustain objection.
ASSISTANT DISTRICT ATTORNEY: This is to malign the witness, Your Honor.
DEFENSE COUNSEL: No, Your Honor, it is for the purpose
THE COURT: Sustained.
OTHER ASSISTANT DISTRICT ATTORNEY: Ask the jury to disregard.
THE COURT: I am going to sustain the objection.
¶ 21. In his brief, Denson asserts: "As clearly evidenced from the above dialog, Denson was even prohibited from making a proffer as to why the crucial testimony was sought to be elicited from Brown." This Court rejects Denson's assertion that the trial court prohibited him from making a proffer "as to why the crucial testimony was sought to be elicited...." Instead, this quoted portion of the record indicates that while Denson's counsel began to explain the purpose of her question about whether Brown had used marijuana earlier that night, she acquiesced in the trial court's sustaining the State's objection. Denson's failure to apprise the trial court about the purpose of her question would require this Court to treat her complaint as a matter of plain error, which it declines to do.[2]
¶ 22. Next, Denson quotes this bit of his counsel's cross-examination of Vanessa Brown:
Q. The morning that he approached you after you came out of the club, he wanted his clothes from the house that you all had been living in? Was he telling you to give him his clothes?
A. No, ma'am.
Q. He was not?
A. No, ma'am.
Q. You want Mr. Denson out of your life; don't you? You don't want anything else to do with him?
A. I don't want anything to do with him, but we have a daughter. And if we could legally get something worked out where if he ever want to see her, he could see her, but I don't ever want to have anything to do with him.
Q. You want him out of your life?
A. Out of my life.

*934 Q. You are seeing someone else now?
ASSISTANT DISTRICT ATTORNEY: Objection, Your Honor. That is not relevant.
THE COURT: Objection will be sustained.
¶ 23. Denson's complaint about this portion of Brown's cross-examination is that "the State was unfairly permitted to explore crucial areas that had been previously forbidden to [him]." To support his complaint, Denson quotes the following question and answer during the State's redirect examination of Brown:
Q. Let me ask you one other question. Counsel asked you if you would do anything to get this defendant out of your life; isn't that correct? Mrs. Brown would you beat yourself in the head and put two gashes in your head and one in your chin and break your own wrist to get rid of him?
A. No, ma'am.
¶ 24. Our extensive quotation from the record demonstrates that Denson's complaints that he "did not enjoy a level playing field" and that "clearly the State was afforded preferential treatment in critical areas going to the heart of [his] defense" are groundless. During the cross-examination of Brown, Denson's counsel asked without objection if Brown would do anything to get Denson out of her life, to which Brown replied that she would "only tell the truth." The State's objection was to defense counsel's question about whether Brown was "seeing someone else."
¶ 25. Finally, Denson complains about his cross-examination by the State during which the State asked him if he had seen Brown "drinking all night," to which he replied, "No, I didn't." He further complains about the State's being allowed to ask him on cross-examination, "Did you see [Brown] smoking anything or doing anything wild all night?," to which Denson replied, "No, I didn't." Denson's counsel objected to neither of these two questions.
¶ 26. To this Court, the following quotation from Denson's brief appears to be the heart of his argument on his first issue:
The possible bias and prejudice of witnesses Young and Brown was [sic] material to Denson's simple assault theory[,] and he was unfairly prohibited from properly portraying this to the trial jury. The resulting effect was to unfairly and effectively eliminate any legitimate chance of having the trial jury seriously consider the lesser offense of simple assault as being a viable option during deliberations.
Denson cites Craig v. State, 660 So.2d 1298, 1300 (Miss.1995) (holding that defendant is entitled to present his theory of the case to the jury as long as there is some evidentiary basis, even if the evidence is insufficient or of doubtful credibility, even though the defendant's is the sole testimony which supports the defense).
¶ 27. The State counters with its argument that "[d]efendant argued [Brown's] bias, possible prejudice, and contentious relationship." The trial court granted Denson's requested instruction on simple assault, and the jury was instructed about the three forms of its verdict in this case. In summary, we review and resolve this issue according to Rule 103(d), as Denson suggests in stating his first issue.[3] While we are not deterred from reviewing this issue by Denson's failure to specify on the record why the testimony about which he complains should have been admitted or why the testimony about which he complains ought not to have been admitted, we are not persuaded to find plain error on this issue.
¶ 28. Denson had other opportunities to present a defense based upon Brown's possible bias or prejudice that might have *935 resulted from their prior intimate relationship, and he was allowed to argue that at most he was guilty of only simple assault, notwithstanding the seriousness of Brown's wounds. The trial court has broad discretion in determining the relevance and admissibility of evidence. Baine v. State, 606 So.2d 1076, 1078 (Miss. 1992); Wade v. State, 583 So.2d 965, 967 (Miss.1991). The evidence excluded by the lower court's ruling did not affect Denson's substantial right to present a complete defense; neither did it rise to the level of plain error. Furthermore, we find no abuse of discretion by the trial court in its various rulings on the evidentiary matters about which Denson complains in his first issue. Therefore, aware of Mississippi Rule 103(a), which we previously quoted, we resolve his first issue against Denson and affirm the various evidentiary rulings which the trial court made in this case, Denson's complaints notwithstanding.

B. Denson's second issue
¶ 29. For his second issue, Denson cites six specific instances of "improper remarks by the prosecution during ... closing argument," any one of which, "standing alone, sufficiently denied [him] a fundamentally fair trial." We begin our review of Denson's second issue by establishing an appropriate standard of review by which to analyze Denson's arguments on this issue.

1. Standard of Review

¶ 30. The Mississippi Supreme Court has stated the following:
We have recognized that considerable latitude must be allowed counsel in the argument of cases, and that this includes prosecuting counsel in criminal cases.... [H]owever ... the enthusiasm of the prosecutor does not justify transgressing reasonable bounds of fairness nor warrant appeals to passion and prejudice. Nor is it permissible to introduce under the guise of argument extraneous and prejudicial matter.
Craft v. State, 271 So.2d 735, 737 (Miss. 1973); see Holland v. State, 705 So.2d 307, 343 (¶ 137) (Miss.1997); Ivy v. State, 589 So.2d 1263, 1266 (Miss.1991); Davis v. State, 530 So.2d 694 701-02 (Miss.1988); Campbell v. State, 437 So.2d 3, 5 (Miss. 1983). The supreme court has also noted that the well-established boundaries restrict counsel to arguing only "the facts introduced in evidence, deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts." Ivy, 589 So.2d at 1266 (citing Davis, 530 So.2d at 701-02).
¶ 31. The test for determining whether an attorney's argument is so prejudicial that an objection should be sustained or a new trial should be granted is "whether the natural and probable effect of improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by prejudice." Harvey v. State, 666 So.2d 798, 801 (Miss. 1995); Johnson v. State, 596 So.2d 865, 869 (Miss.1992). The trial court exercises considerable discretion in applying this test and considering the circumstances of each case in ruling on whether arguments are overly prejudicial. Harvey, 666 So.2d at 801.

2. Analysis

¶ 32. Denson relies on Griffin v. State, 557 So.2d 542 (Miss.1990), to support his argument "that during the closing argument phase of the trial, the prosecution made numerous improper and unduly prejudicial remarks, ... the resulting cumulative effect of [which] denied [him] a fundamentally fair trial." In Griffin, the supreme court reversed the appellant's conviction of capital murder and death sentence because of prosecutorial misconduct. Id. at 553. The supreme court explained that "[t]he one error of commenting on the defendant's failure to testify requires reversal of the entire case." Id. A majority of the justices arrived at this conclusion even though they were compelled to treat Griffin's complaint as a *936 matter of plain error because Griffin made no "contemporaneous objection" to the prosecutor's comment when he made it. Id. In the case sub judice, Denson testified in his own behalf, so Griffin is not precisely on point.
¶ 33. However, Griffin also complained of "`numerous instances of prosecutorial misconduct,'" which included "inflammatory closing argument which lacked evidentiary support." Id. The supreme court opined: "Without detailing each and every one of these asserted improper prosecutorial acts, this Court holds that, as a whole, this defendant was not afforded a fundamentally fair trial." Id. Relevant to our resolution of Denson's second issue is the following quotation from Griffin: "However, even without that one reversible error [the prosecution's comment on Griffin's failure to testify], this Court is compelled to say that the cumulative effect of all of these assigned actions would require reversal." Id. (citations omitted). Griffin requires that this Court review Denson's six instances of prosecutorial misconduct of which he contends the State was guilty during the prosecutors' closing arguments.
a. "Victim's Rights" argument
I mean, let's face it, the defendant has a lot of rights, and that is the way that it should be. He has a right to demand a trial, and he has the right to take the stand in his own defense, and has the right to present witnesses. But what about the rights of the victim? Whatever happened to that?
DEFENSE COUNSEL: We object to this. Arguing victim rights. The victim came in and testified. She had all these rights.
ASSISTANT DISTRICT ATTORNEY: I would like to finish my argument, Your Honor.
THE COURT: Overruled.
ASSISTANT DISTRICT ATTORNEY (CONTINUING):
Doesn't the victim have the right to come in here and relate to the jury of twelve people an incident that happened to her without being made to look like the bad guy. My point is this: Why ask the questions of Ms. Brown, Had you been smoking marijuana that night? What in the world does that have to do with this defendant beating on Ms. Brown.
¶ 34. Denson's objection was based upon the State's "[a]rguing victim rights," yet in his appeal brief, Denson metamorphoses "victim rights" into "a hybrid victim character/impact statement." Denson argues that the previously quoted closing argument "was nothing more than an attempt to present a hybrid victim character/impact statement before the trial jury for the express purpose of inflaming their passions." Denson further contends that the victim's rights are "totally irrelevant to the issue of guilt or innocence of Denson so that "the allowance of the same should be held to be plain and reversible error." The State counters that "improper victim impact argument" was not the objection voiced at trial and, therefore, Denson is "procedurally barred" from arguing "improper victim impact argument" because he did not present his "victim impact" objection to the trial court. The State cites Conner v. State, 632 So.2d 1239, 1255 (Miss.1993) (holding that "[a]n objection on one or more specific grounds constitutes a waiver of all other grounds); see also McGarrh v. State, 249 Miss. 247, 276, 148 So.2d 494, 506 (1963) (stating that an objection cannot be enlarged in reviewing court to embrace omission not complained of at trial).
¶ 35. Denson cites but one precedent to support his objection to the previously quoted closing argument, and that is Justice Sullivan's dissent in Wilcher v. State, 697 So.2d 1123, 1143-47 (Miss.1997) (Sullivan, J., dissenting). The issue in Wilcher, in which the appellant had been convicted of capital murder and sentenced to death, was whether the trial was fundamentally unfair because the victim's family were allowed to testify about the effect of the *937 murder (victim impact), but the defendant's family were not allowed to ask the jury to spare the defendant's life during the sentencing phase of the trial. Wilcher, 697 So.2d at 1144. This Court finds no relevance between the "victim impact" issue in Wilcher and Denson's counsel's objection based on "victim's rights." Therefore, while this Court agrees with the State's argument that this aspect of Denson's second issue is procedurally barred, it also holds that Denson's argument based on Wilcher is a non sequitur on which it would resolve this first aspect of the second issue adversely to Denson.
¶ 36. The next three snippets of the State's closing arguments about which Denson complains are the following:
The question is: Are you buying what he is selling? Because it is a load that he is selling. So go back there and go over the facts of the case and judge who you think is credible. Go back there and cut the defendant loose and give him a simple assault charge because you believe he didn't have a gun that night.
She could have sat there ... and watch this bully beat this woman to death, but she didn't, and she certainly didn't have any kind of duty imposed on her to go around collecting other people for them, domestic abuse they call it, simple assault. That is what they want you to do. They want you to give him the very, very, very lightest, the most benefit of the doubt, be as lenient as you can.
There is another instruction that says, If you find that there was no gun, then you can do simple assault. You can excuse him. You can pretty much not hold him accountable.
The first quotation occurred during the State's initial opening argument, and the last two quotations occurred during the State's final closing argument made after Denson's counsel had concluded closing argument.
¶ 37. Denson complains that "[t]he thrust of the prosecutor's misconduct was to inform the jury that a conviction for simple assault would have been nothing more than a slap on the wrist," although a potential incarceration for a period of six (6) months in the county jail could hardly be termed "cutting one loose" as the prosecutor argued. Denson contends that the foregoing portions of the State's closing arguments "lessen[ed] the sense of the trial jury's responsibility...." The State counters that "there was no objection to [these arguments] by ... defense counsel. Consequently, this is also procedurally barred for failure [contemporaneously] to object." It cites Chase v. State, 645 So.2d 829, 854-55 (Miss.1994) (holding that no objection to closing argument procedurally bars appellate review of any error in closing argument). The record contains no objection by Denson's counsel to any of the three foregoing portions of the State's closing arguments. Thus, were this Court to resolve this second aspect of Denson's second issue favorably to him and reverse and remand this case for a new trial, it would be compelled to do so as a matter of plain error.
¶ 38. Denson cites no authority to support his proposition that these arguments "lessen[ed] the sense of the trial jury's responsibility," so this Court declines to treat Denson's complaint as a matter of plain error. See Ellis v. Ellis, 651 So.2d 1068, 1073 (Miss.1995) (holding that where appellant fails to cite any authority to support his argument, "this Court has consistently held that an unsupported assignment of error will not be considered"). For these reasons, we resolve the second aspect of Denson's second issue adversely to him.
¶ 39. The fifth fragment of the State's closing argument which Denson attacks is the following:
Now, in this conspiracy to get rid of him, where she had no injuries, apparently University Medical Center decided that they would play a role in that, too, because if you remember while they say this woman wasn't hurt at all, when she *938 went to the precinct the same morning that she left the hospital and was helped to the precinct, Officer Lewis, an officer for twenty years, didn't even identify this man because she doesn't know him. Didn't know anybody. And her job was to take reports. And she wrote in her report and she reported it to you that Vanessa Brown came in with her head all bandaged up with a thing on her chin and with a castwith a cast on her arm. So if her wrist wasn't fractured or broken, apparently somebody at University
DEFENSE COUNSEL: Your Honor, I am going to object to her repeatedly talking about this fracture or the break. It is not into evidence, and the State knows that, in fact, there is medical evidence that there was no fracture. They are outside the evidence
ASSISTANT DISTRICT ATTORNEY: Objection, Your Honor, to testifying in objections. That is totally improper and ask that you instruct him to do so.
THE COURT: Just a moment. Objection will be overruled.
¶ 40. Denson criticizes the foregoing final argument because it "comment[ed] on facts which had not been introduced into evidence." He contends, "Whether or not Brown suffered a broken wrist or other injuries as testified to was not supported by medical testimony or documentation." Denson contends that "[i]t would have been a simple matter for the State to [support Brown's broken wrist], however, they [sic] chose not to and should not benefit from a deliberate circumvention of the rules of evidence to establish material facts at issue." Without citing authority for its assertion, the State counters that "[a] victim's testimony is sufficient where there is direct knowledge."
¶ 41. In Dennis v. Prisock, 221 So.2d 706, 710 (Miss.1969), the Mississippi Supreme Court wrote:
Any witness is competent to testify who has evidentiary facts within his personal knowledge, gained through any of his senses. A nonprofessional witness may describe personal injuries. Physical pain, weakness, exhaustion and the like are matters one may testify about.
Vanessa Brown testified without objection that her wrist was fractured in two places and that someone at UMC had placed a thing "like a cast" on her arm. Brown testified, also without objection, that its purpose was "[t]o keep [her] arm in place because the bones were cracked in two places." Janice Young testified that when she drove to UMC the next day to take Brown to precinct 3 to complete a report on Denson's attack, Brown "had a cast on." Officer Linda Lewis testified that Brown had a cast on her arm when she entered the precinct.
¶ 42. There was no "deliberate circumvention of the rules of evidence to establish material facts at issue" by the State. The evidence was sufficient to support the State's argument about Brown's fractured wrist. Therefore, we resolve this third aspect of Denson's second issue adversely to him by affirming the trial court's overruling Denson's objection to the State's closing argument about Brown's broken wrist.
¶ 43. The sixth portion of the State's closing argument which Denson has made the subject of his second issue is the following:
And Janice Young, thank goodness for Janice Young. She didn't tell them about Thomas, whatever his name is. And to show you how honest they were in trying to set him up, as they say, when we asked Vanessa Brown about the lighting, when they started suggesting, oh, it was dark out there. If it was him, you couldn't see him because it was so dark. Vanessa told us about the light. She said the light was out in my car, the dome light was broken. She was trying to set him up, all she had to do was say, oh, yeah, it was working great. I saw him fine.

*939 When I asked Janice Young about Thomas, she said he didn't want to get involved, and, no, I didn't want to tell them. She came in here and told the truth. And thank goodness for Janice Young.... Thank goodness for Janice Young or we could have been here this morning on a much more serious charge than what we are here for because this defendant, as strong as he was, even by his admission when he slapped her, he said, I slapped her as hard as I could and swung all the way back.
About this portion of the State's closing argument, Denson complains that it "improperly bolstered the testimony of the State witnesses and vouched for their truthfulness in the presence of the jury" because "the prosecutor praised Janice Young for her testimony as her presence at the scene, according to the theory offered by the State, probably saved Brown's life." However, Denson's counsel did not object to the quoted argument when the prosecutor offered it for the jury's consideration; thus Denson's complaint is procedurally barred. Even so, "[d]uring closing argument, the prosecutor, as well as defense counsel, may comment on facts in evidence and may draw proper deductions from those facts." Chase v. State, 699 So.2d 521, 538 (Miss. 1997). "[O]rdinarily, the prosecuting attorney may, in his argument, favorably comment on the conduct and character of the [S]tate's witnesses." 23A C.J.S. Criminal Law § 1264 (1989). Regardless of the procedural bar, this Court finds no improper bolstering of the State's witness, Janice Young, in the quoted portion of closing argument; instead it opines that the quotation constituted favorable comment on Young's conduct of calling the police and driving Brown to the hospital.

IV. CONCLUSION
¶ 44. In his first issue, Denson proposed that the trial court had restricted his ability to present a proper defense and thus denied him a fair trial because the trial court sustained the State's objections to his counsel's questions of Vanessa Brown about whether she had smoked marijuana while she was inside the 500 Club and about whether she was seeing someone else when this case was tried. From our analysis of the record, we concluded that the trial court did not err in its rulings on the evidentiary issues about which Denson complained in his first issue. In his second issue, Denson complained of six specific instances of prosecutorial misconduct which the assistant district attorneys committed during both their initial and rebuttal closing arguments. Again, our analysis of those six instances revealed that defense counsel's objections based either on "victim impact" or on absence of evidence in the record to support the comments made during closing argument were misplaced. The prosecutors did not impermissibly bolster the testimony of Janice Young, and there were no objections to the remaining three instances of claimed prosecutorial misconduct regarding the jury's option of convicting Denson of simple assault, a misdemeanor. Thus, we affirm the trial court's judgment of Denson's guilt of aggravated assault, and we uphold the sentence which the trial court imposed upon him.
¶ 45. THE HINDS COUNTY, FIRST JUDICIAL DISTRICT, CIRCUIT COURT'S JUDGMENT OF APPELANT'S GUILT OF AGGRAVATED ASSAULT AND ITS SENTENCE OF APPELLANT TO SERVE TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HINDS COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, and THOMAS, JJ., CONCUR.
NOTES
[1] Rule 103 of the Mississippi Rules of Evidence reads, in part, as follows:

RULE 103. RULINGS ON EVIDENCE.
(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked....
[2] Denson may have sought to avoid the dictate of Mississippi Rule of Evidence 608(b) which provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.
M.R.E. 608(b).
[3] M.R.E. 103(d) reads as follows:

(d) Plain Error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.