868 So.2d 355 (2003)
Shad Edward NICHOLS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KP-00230-COA.
Court of Appeals of Mississippi.
August 5, 2003.
Rehearing Denied October 28, 2003.
Certiorari Denied March 11, 2004.
*357 Shad Edward Nichols (Pro Se), Daniel Dewayne Ware, attorneys for appellant.
*358 Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., BRIDGES and IRVING, JJ.
BRIDGES, J., for the Court.
¶ 1. The grand jury of Simpson County, Mississippi indicted Shad Nichols for the crime of killing Jennifer May by culpable negligence in violation of Mississippi Code Annotated section 97-3-47. Nichols was found "guilty as charged" and by order was sentenced to seventeen years in the Mississippi State Penitentiary. It is from that judgment of conviction that Nichols now appeals.

STATEMENT OF THE ISSUES
I. WHETHER THE TRIAL JUDGE ERRED WHEN HE DENIED NICHOLS'S MOTION FOR CHANGE OF VENUE.
II. WHETHER THE TRIAL JUDGE ERRED WHEN HE DENIED NICHOLS'S REQUEST FOR A PEREMPTORY INSTRUCTION.
III. WHETHER THE INDICTMENTS WERE VOID BECAUSE THEY FAILED TO PUT NICHOLS ON NOTICE OF THE CHARGE AGAINST HIM.
IV. WHETHER THE TRIAL COURT LACKED JURISDICTION TO PROSECUTE NICHOLS BASED UPON THE INDICTMENT.
V. WHETHER NICHOLS WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.

FACTS
¶ 2. On November 27, 2000, Patricia Westberry, a pharmacist at D & P Discount Drugs (record does not indicate city), filled a prescription for Shad Nichols. Pursuant to the prescription presented by Nichols, Westberry gave him the drug Oxycontin, which is a brand name for oxycodone, a Schedule II drug. Later that same day, Nichols drove to the home of Jennifer May, a fifteen-year-old girl, where she lived with her brother, Philip Wayne May II, and her mother, and waited for Jennifer in the front yard. When Jennifer got off her school bus and as she was walking up to her doorstep, Nichols approached her and started to shake the bottle of pills at her.
¶ 3. At approximately 4:00 p.m. that same day, Nichols, Jennifer and her brother, Philip, went to get something to eat at Wards. While there, Nichols informed them that they were going to go home and get high. After leaving Wards, they went to Nichols's mobile home where Nichols took the bottle of pills out of his pocket and handed some pills to both Jennifer and Philip.
¶ 4. After about one and one half hours after they arrived at Nichols's home, Nichols and Jennifer went into the bathroom for the purpose of "shooting" Oxycontin. Philip opened the bathroom door and witnessed Nichols sitting down and was pushing a needle toward Jennifer's foot, "fixing to inject her with Oxycontin."
¶ 5. Philip told Jennifer not to inject herself with Oxycontin and when she refused to leave, Philip walked back to the living room. When Jennifer finally came out of the bathroom Philip could tell she was "messed up" and intoxicated. Jennifer eventually became sick. Nichols and Jennifer then decided to go to Jackson and informed Philip that he could not go.
¶ 6. Nichols informed law enforcement that early the next morning he found Jennifer *359 asleep on the couch and carried her to his bed. Later, after realizing she was in trouble, Nichols tried to give Jennifer CPR. It was then that Nichols's father called for emergency assistance. It is not clear from the record when exactly Jennifer died; whether she was dead when Nichols found her or died later when the emergency assistance arrived.

ANALYSIS

I. WHETHER THE TRIAL JUDGE ERRED WHEN HE DENIED NICHOLS'S MOTION FOR CHANGE OF VENUE.
¶ 7. Nichols claims that the trial judge erred when he denied Nichols's motion for a change of venue. He argues that the newspapers had prejudiced the people in the county against him.
¶ 8. Motions for a change of venue are left to the trial court's sound discretion. Swann v. State, 806 So.2d 1111, 1116 (¶ 20) (Miss.2002). The Mississippi Supreme Court has also held that it will not disturb the ruling of the lower court on a change of venue unless there is an abuse by the trial judge. Shook v. State, 552 So.2d 841, 849-50 (Miss.1989).
¶ 9. Mississippi Code Annotated section 99-15-35 states that if a defendant swears that he cannot get a fair and impartial trial in the county where the offense is committed, in writing, and submits two affidavits by credible persons corroborating his claim, because of prejudgment of the case, grudge, or ill will towards the defendant, the circuit court may change the venue of the trial. Miss.Code Ann. § 99-15-35 (Rev.2000). The Mississippi Supreme Court has found that if the defendant properly applies for a change of venue under Mississippi Code Annotated section 99-15-35, as amended, a presumption arises that an impartial jury cannot be obtained. Porter v. State, 616 So.2d 899, 905 (Miss.1993).
¶ 10. However, the State can rebut this presumption, that the defendant could not receive a fair trial, by proving from voir dire that the trial court impaneled an impartial jury. Holland v. State, 705 So.2d 307, 336 (¶ 97) (Miss.1997); also see Swann v. State, 806 So.2d at 1116 (¶ 19). Therefore, if the State can prove from voir dire that an impartial jury was actually selected, this will overcome a showing of adverse pretrial publicity, and the trial judge's discretion will not be overturned. Harris v. State, 537 So.2d 1325, 1329 (Miss.1989). One should also note that when a prospective juror assures the court he can be impartial, this assurance is entitled to considerable deference. Scott v. Ball, 595 So.2d 848, 850 (Miss.1992).
¶ 11. In accordance with the aforementioned caselaw, the State produced evidence during the hearing which rebutted the presumption which arose form Nichols's affidavits and motion. The record clearly supports a finding that a fair and impartial jury was actually selected. The jury panel was asked if it had heard anything about the case or Shad Nichols either in the newspaper or otherwise that would prevent it from being fair and impartial jurors. There was no response. The jurors were asked again, only this time by the judge, if any of them could not decide the case strictly upon the evidence and the law. There was no response. The judge continued to ask if there was anything that might affect their ability to be fair and impartial jurors. No one responded. In conformity with Swann and Holland, the State rebutted the presumption that Nichols could not receive a fair trial by proving from voir dire that the trial court impaneled an impartial jury.
¶ 12. There is no showing that Nichols has met his burden of showing that the *360 trial judge abused his discretion when he overruled Nichols's motion for change of venue. This issue is, therefore, without merit.

II. WHETHER THE TRIAL JUDGE ERRED WHEN HE DENIED NICHOLS'S REQUEST FOR A PEREMPTORY INSTRUCTION.
¶ 13. Another claim made by Nichols was that the trial judge erred when he denied Nichols's request for a peremptory instruction. Nichols contends that the proof did not support a finding of culpable negligence. He further argues that the two pills he admitted to giving to Jennifer May were not enough to cause the overdose which killed her.
¶ 14. "The standard of review for a denial of a directed verdict, peremptory instruction and a J.N.O.V. are identical." Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003). "When reviewing a denial of a peremptory instruction or a denial of a motion for judgment notwithstanding the verdict, the standard of review requires us to consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences which may be reasonably drawn from the evidence." Baker v. State, 802 So.2d 77, 81 (¶ 13) (Miss.2001). The court is required to reverse and render where the facts point overwhelmingly in favor of the appellant that reasonable men could not have found appellant guilty. Id. However, we are required to affirm where substantial evidence of such quality and weight exists to support the verdict and where reasonable and fair minded jurors may have found the appellant guilty. Id. Also see Weeks v. State, 823 So.2d 578, 579-80 (¶ 9) (Miss.Ct.App.2002).
¶ 15. In the case of Smith v. State, culpable negligence was defined as "the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the willful creation of an unreasonable risk thereof." Smith v. State, 197 Miss. 802, 817, 20 So.2d 701, 705 (1945). "All the State must prove with respect to the victim is that he was prior to the incident a live human being. The homicide laws of this State protect all living beings within the jurisdiction, sinners as well as saints, drunks as well as deacons." Dickerson v. State, 441 So.2d 536, 538 (Miss.1983). In addition, oxycodone is a controlled substance included in Schedule II. Miss.Code Ann. § 41-29-115(xiv) (Rev.2001). It is a crime for anyone in lawful possession of oxycodone to give oxycodone to another person in the absence of lawful authority. Miss.Code Ann. § 41-29-139(a)(1) (Rev.2001) (makes it a crime to transfer, distribute, or dispense controlled substances).
¶ 16. As the law requires in Baker and Weeks, the evidence was sufficient to support a finding that a reasonable and fair minded hypothetical juror could have found Nichols guilty of manslaughter by culpable negligence. In the record, there was evidence that Jennifer was alive and in the bathroom with Nichols. Philip, Jennifer's brother, claimed that he walked in the bathroom and saw Nichols sitting down pushing a needle towards Jennifer's foot. When Jennifer came out of the bathroom, there was also testimony by Philip that she looked "messed up" and intoxicated. Jennifer then became ill and had to go outside where she continued to vomit. There is also the statement by Nichols that he gave Jennifer two Oxycontin pills and the next morning found Jennifer unconscious.
¶ 17. Also in evidence is the testimony of Dr. Steven Hayne, a forensic pathologist, who stated that a far greater amount of Oxycontin is delivered by injection than is received through an oral ingestion, and a *361 much higher level of Oxycontin is found in the blood when delivered by injection. Dr. Hayne also found that the Oxycontin level in Jennifer's blood was approximately eleven times higher than the high therapeutic level, and was approximately five and one half times higher than the toxic level of Oxycontin.
¶ 18. As the law dictates in Dickerson, the only thing the State had to prove with respect to the victim is that, prior to the incident, she was a live human being. It is perfectly clear that the evidence in the record was sufficient to prove Nichols was guilty. When all of the evidence contained in the record and all reasonable inferences arising therefrom are viewed in the light most favorable to the State, a reasonable fair minded juror acting in good faith could have found that the Oxycontin given by Nichols to Jennifer May caused her death. Therefore, because of the aforementioned reasons, this issue is without merit.

III. WHETHER THE INDICTMENTS WERE VOID BECAUSE THEY FAILED TO PUT NICHOLS ON NOTICE OF THE CHARGE AGAINST HIM.
¶ 19. Nichols argues that the indictment was void because it failed to put him on notice of the charge against him. However, Nichols failed to challenge the indictment before the trial court, therefore, preserving the issue for appeal. This Court sits to review alleged errors committed at the trial level and not to adjudicate the merits of claims not previously presented to the trial court for resolution. Denson v. State, 746 So.2d 927, 932 (¶17) (Miss.Ct.App.1999). In his brief, Nichols does not indicate when he raised the issue before the circuit court nor was this Court able to locate any mention of this issue at the trial court level; therefore, he has failed to preserve the issue and is procedurally barred from bringing the issue before this Court. We find that Nichols is procedurally barred from raising the issue on appeal.

IV. WHETHER THE TRIAL COURT LACKED JURISDICTION TO PROSECUTE NICHOLS BASED UPON THE INDICTMENT.
¶ 20. Another argument made by Nichols is that the indictment was defective because it did not identify the judicial district in which Nichols is alleged to have committed the crime.
¶ 21. This Court sits to review alleged errors committed at the trial level and not to adjudicate the merits of claims not previously presented to the trial court for resolution. Id. Again, Nichols does not indicate when he raised the issue before the circuit court nor was this Court able to locate any mention of this issue at the trial court level; therefore, he has failed to preserve the issue and is procedurally barred from bringing the issue before this Court. We find that this issue is procedurally barred.

V. WHETHER NICHOLS WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.
¶ 22. The final argument made by Nichols is that he received ineffective assistance of counsel. He stated three grounds for this claim. First, Nichols claims that defense counsel failed to demur to the indictment because it failed to identify the judicial district in which the crime occurred. Second, he argues that defense counsel failed to inform him of the status of the case, failed to file a speedy trial motion on charges pending against Nichols, and failed to file a notice of appeal or move for an appeal bond. Lastly, Nichols claims that defense counsel failed to subpoena and put on character witnesses, and also failed to subpoena and call to the stand witnesses who could testify that Jennifer *362 said she wanted to kill herself because her parents were prostituting her for crack cocaine.
¶ 23. The Supreme Court of the United States in the case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), clearly set the guidelines for judicial determination of cases involving effective or ineffective assistance of counsel.
¶ 24. There are two components that Nichols must prove in order for his claim of ineffective assistance of counsel to prevail and require reversal of his conviction. First, Nichols must show that his "counsel's performance was deficient." Id. at 687, 104 S.Ct. 2052. Second, Nichols must show the "deficient performance prejudiced the defense." Id. This requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In regards to this second prong, Nichols must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052; see Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985); Stringer v. State, 454 So.2d 468, 477 (Miss.1984). Nichols must prove both of these elements in order to succeed on his claim. Id. Each case should be decided based on the totality of the circumstances, that is, by looking to the evidence in the entire record. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990); Stringer, 454 So.2d at 476. The standard of performance used is whether counsel provided "reasonably effective assistance." Leatherwood, 473 So.2d at 968. "There is a strong presumption that counsel's conduct is within the wide range of reasonable professional conduct." Id. at 969.
¶ 25. Nichols claims that defense counsel failed to demur to the indictment because the indictment failed to identify the judicial district in which the crime occurred. The crime Nichols is charged with occurred in Simpson County. Simpson County is not divided into separate judicial districts, like some other counties. Therefore, whether the indictment failed to state the judicial district where the crime occurred is irrelevant.
¶ 26. As for the failure to inform regarding trial status, the record does not support a finding, and Nichols does not allege, that he would have prevailed on a claim alleging denial of a speedy trial. Nor does Nichols allege that he suffered any prejudice from any trial delay. The Mississippi Supreme Court has been reluctant to order dismissal of charges on speedy trial issues where no actual prejudice has been shown. State v. Woodall, 801 So.2d 678, 685 (¶ 24) (Miss.2001). Additionally, it is not clear from the Appellant's brief if Nichols is referring to the trial upon which this appeal is based or otherwise. Nichols's conviction is on appeal so he has failed to demonstrate prejudice due to the notice of appeal or appeal bond.
¶ 27. Regarding the failure to call character witnesses, there was no contested facts which required the jury to make credibility findings, nor did Nichols demonstrate that character witnesses would have assisted his case at trial. Nichols has not demonstrated that the failure to call character witnesses caused him any prejudice. Nor has Nichols proven that the decision not to call character witnesses did not fall into the class of trial strategy. Lastly, there is nothing in the record that even hints that there is a reasonable probability that, but for the failure to put on the character witnesses at trial, the result would have been different. Therefore, Nichols has failed to prove at least the second element of the Strickland test, a *363 test in which he must prove both elements in order to prevail on his claim of ineffective assistance of counsel.
¶ 28. Regarding the failure to call witnesses who would testify that Jennifer told someone that she wanted to kill herself, that evidence would have been irrelevant and not admissible. The relevant facts include: Nichols gave Jennifer oxycodone, she took oxycodone, and she died from an oxycodone overdose. These facts were not contested. If there was any disputed issue about those facts, Nichols might have had a stronger argument that the testimony would have been relevant and admissible.
¶ 29. It is clear that defense counsel's professional performance was not deficient, and there was no showing that the failure to call witnesses who would testify about Jennifer's statements prejudiced Nichols's case. In this instance, Nichols has failed to prove either prong of the Strickland test.
¶ 30. This Court finds that this issue is without merit.
¶ 31. THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF SEVENTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO SIMPSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.