935 So.2d 1067 (2006)
Jacob SULLINGER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KP-00071-COA.
Court of Appeals of Mississippi.
January 10, 2006.
Rehearing Denied May 2, 2006.
*1068 Jacob Sullinger, Appellant, pro se.
Office of the Attorney General by Jeffrey A. Klingfuss, John W. Champion, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
IRVING, J., for the Court.
¶ 1. Jacob Sullinger was convicted by a DeSoto County jury of manslaughter, and was sentenced to twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, he appeals pro se and argues that his conviction should be overturned because: (1) the evidence was insufficient to support his conviction; (2) the State failed to investigate fully and preserve exculpatory evidence, thereby denying him his right to a fair trial; (3) the State violated Rule 9.04 by not fully investigating the crime scene; (4) the counsel provided to Sullinger was ineffective, thus depriving him of his right to effective assistance of counsel; (5) Sullinger was denied his Sixth Amendment right to appellate counsel; and (6) cumulative errors rendered Sullinger's trial unfair, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. In April 2002, Sullinger went over to the home of a friend to work on a truck that belonged to Joey Riles. Riles was present at the house, although he was asleep inside when Sullinger first arrived. Sullinger attempted to wake Riles several times so that Riles could provide assistance. When Riles finally came out to help, he and Sullinger argued, and eventually began to fight physically. At some *1069 point, Sullinger allegedly injured Riles's hand, and Riles allegedly threw a pipe at Sullinger. Riles then retreated to the house's porch, where Sullinger used a pipe to deliver a fatal blow to Riles's head. After assaulting Riles, Sullinger got in his vehicle and left the house. Expert testimony at trial showed that Riles died as a result of the blow. Additional facts will be related during the discussion of the issues, if necessary.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Sufficiency of the Evidence
¶ 4. In his first allegation of error, Sullinger contends that his motion for directed verdict should have been granted because the evidence presented was insufficient to sustain his conviction.
¶ 5. When the sufficiency of the evidence supporting a conviction is challenged, the crucial determination is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005) (citing Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). An appellate court should reverse and render if "the facts and inferences. `point in favor of the defendant on any element of the offense with sufficient force that reasonable [persons] could not have found beyond a reasonable doubt that the defendant was guilty.'" Id. (citing Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 6. We find that the evidence here is sufficient to sustain Sullinger's conviction.[1] There was testimony that Sullinger and Riles had been arguing, and that the altercation had escalated to physical violence. Before Sullinger hit Riles, a witness testified that Sullinger said, "Do you want me to hit you, huh? Huh? Do you want to see how it feels? Do you want me to hit you?" The same witness observed Sullinger throw a pipe off the porch shortly after the blow. Sullinger also fled the scene of the crime, after stating something to the effect that Riles would "just have a bad headache." Sullinger's defense at trial was not that he had not hit Riles, but instead was that he had acted in self-defense when doing so.
¶ 7. Although Sullinger attempts to cast doubt on the credibility of several witnesses during his recitation of the facts, we note that all of these credibility issues were brought to the attention of the jury. "[We] consistently [hold] that decisions as to the weight and credibility of a witness's statement are the proper province of the jury. . . ." Doe v. Stegall, 757 So.2d 201, 205(¶ 12) (Miss.2000). Since the jury had all the information that implicated the credibility of various witnesses, we decline to substitute our judgment for that of the jury.
¶ 8. In order to find Sullinger guilty of manslaughter, the jury had to find that (1) he killed a human being, (2) without malice, (3) in the heat of passion, (4) by the use of a deadly weapon, (5) without authority of law, and (6) not in necessary self-defense. After a careful review of the *1070 record, we find that a reasonable jury could have found that all of these elements were proved. The judge did not err in denying Sullinger's motion for a directed verdict.

(2) Failure to Investigate and Preserve Exculpatory Evidence
¶ 9. In his second allegation of error, Sullinger asserts that he was denied his right to a fair trial because the State failed to fully investigate or preserve exculpatory evidence.
¶ 10. When reviewing claims that the State in a case failed to preserve evidence, a three-part test has developed in Mississippi: "(1) the evidence in question must possess an exculpatory value that was apparent before the evidence was destroyed, (2) the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means, and (3) the prosecution's destruction of the evidence must have been in bad faith." Murray v. State, 849 So.2d 1281, 1286(¶ 16) (Miss.2003) (quoting State v. McGrone, 798 So.2d 519, 523(¶ 11) (Miss.2001)).
¶ 11. Although Sullinger cites case law dealing with the destruction of evidence, he then argues that "the jury, in its conviction, relied upon an incomplete investigation of the facts. . . ." We note that this is not an argument about destruction of evidence, since Sullinger does not allege that any evidence was actually destroyed, accidentally or otherwise. Sullinger claims that the failure of the State to interview witnesses denied him his right to a fair trial by causing surprise to him, because there were individuals present at the scene of the crime who were not interviewed by the State before trial, and whom the defense learned about only during cross-examination.
¶ 12. The State urges, and we agree, that there was adequate investigation by law enforcement in this case. Furthermore, we note that Sullinger provides little citation to either the record or case law when making these assertions. The only case law cited refers to destruction of evidence, which was not an issue in this case. All of the witnesses that Sullinger refers to could have easily been identified with minor effort on the part of Sullinger's attorney by interviewing the known witnesses who were on the scene. Further, the record indicates that the potential witnesses that Sullinger refers to were not present at the time of the incident; they arrived on the scene later. Thus, it is difficult to understand how these witnesses would have aided in Sullinger's defense, and he provides very little to this Court in the way of specific allegations as to how these alleged witnesses would have aided his defense.
¶ 13. From the record before us, we find that the State did not fail to preserve evidence in this case. Further, there was no unfair surprise to Sullinger resulting from the cross-examination of various witnesses. Additionally, we note that Sullinger himself acknowledges that these witnesses were not objected to at trial, stating: "although defense counsel did not raise proper objection, the same represents plain error and should be considered in reversal of the verdict. . . ." We are unable to find that the State's actions in this case rose to the level of plain error. Therefore, we reject Sullinger's second argument.

(3) Production of Discovery Pursuant to Rule 9.04
¶ 14. In his third allegation of error, Sullinger alleges that the State violated Rule 9.04 of Uniform Rules of Circuit and County Court by "intentionally and deliberately" *1071 failing to inform Sullinger that the victim's body had been moved, that the alleged knife had been moved, and by failing to adequately investigate the scene of the crime."
¶ 15. We are unable to find that any of the State's actions prejudiced Sullinger's ability to prepare his defense. The repositioning of the victim's body, by individuals who were not associated with the State, had no impact whatsoever on Sullinger's case. Furthermore, Sullinger does not allege any actual prejudicial impact. The knife at issue was not "moved" instead, it was brought to the attention of law enforcement well after the investigation of the scene had been completed.[2] Sullinger's further assertion that "the police had not actually retrieved the knife until after the initial investigation and canvassing of the scene had long been over, [and] Sullinger could have presented this at the trial in order to create a reasonable doubt to the jury" borders on the disingenuous. All the officers who were called to testify steadfastly maintained that they did not find the knife during their investigation at the scene, because the knife was not on the scene at the time. Photographs taken at the time of the incident corroborated this testimony. More importantly, Sullinger did present this evidence to the jury: law enforcement witnesses were questioned extensively during cross-examination about whether they had found a knife during their investigation, and why they had only retrieved the disputed knife after that investigation. In short, this evidence was presented to the jury to consider in returning its verdict.
¶ 16. Sullinger cites Little v. State, 736 So.2d 486, 489 (Miss.Ct.App.1999) as support. That case does not help Sullinger because Little deals with the State's withholding of known exculpatory evidence, a fact which does not exist in the current case. In the present case, even Sullinger does not assert that the State withheld exculpatory evidence.
¶ 17. Rule 9.04 of the Uniform Rules of Circuit and County Court, governing discovery, dictates what evidence the State must disclose during discovery. As already discussed above, we find that the State did not withhold any evidence from Sullinger. Therefore, Rule 9.04 provides no ground for any possible error.

(4) Ineffective Assistance of Counsel
¶ 18. In his fourth allegation of error, Sullinger claims that he was denied his constitutional right to effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss.1984). According to that test, a defendant must show (1) that his attorney's performance was defective, and (2) that that deficiency prejudiced his right to a fair trial. Id. at 477. When determining whether there was error, we look at the totality of the circumstances surrounding an attorney's performance. Hiter v. State, 660 So.2d 961, 965 (Miss.1995). One asserting ineffective assistance of counsel has a significant hurdle to overcome before prevailing and the "analysis begins with the strong but rebuttable presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Appellate review of counsel's performance *1072 is `highly deferential.'" Id. (citations omitted).

(a) Failure to Present Evidence

¶ 19. Sullinger alleges that his counsel was ineffective for failing to present evidence that the knife and victim's body had been moved. He also finds fault with his counsel's failure to present evidence of the police failure to conduct an adequate search of the crime scene. However, as already discussed, this evidence was presented to the jury by Sullinger's counsel. Testimony at trial clearly indicated that the victim's body had been moved and that any knife which may have been at the crime scene was not found until later. During his cross-examination, Sullinger's counsel strongly questioned law enforcement as to how thorough their search and investigation of the scene was. Sullinger's argument does not overcome the presumption that his counsel's performance was competent.

(b) Character Witnesses
¶ 20. We note that decisions of trial strategy, such as whether to call a certain witness, "cannot give rise to an ineffective assistance of counsel claim." Anderson v. State, 904 So.2d 973, 980(¶ 27) (Miss.2004) (quoting Carr v. State, 873 So.2d 991, 1003(¶ 27) (Miss.2004)). In Nichols v. State, 868 So.2d 355, 362(¶ 27) (Miss.Ct.App.2003), we stated that a defendant was not entitled to relief for counsel's failure to call character witnesses where the defendant did not "demonstrate that character witnesses would have assisted his case at trial." Likewise, in the current case, Sullinger has failed utterly to demonstrate that these witnesses would have changed the outcome in his case. He has presented no evidence, or even argument, indicating how this failure to call character witnesses prejudiced his defense. Therefore, even if we were to find that Sullinger's counsel was defective in this regard, Sullinger still could not prevail, because we are unable to find that Sullinger has demonstrated any prejudice that arose from this alleged deficiency.

(c) Failure to Investigate the Scene

¶ 21. Sullinger next alleges that his counsel was ineffective for failing to investigate the crime scene before trial and for failing to make a motion to allow the jury to view the crime scene. We find that this argument fails to satisfy the two-pronged test required by Strickland. First, we note that Sullinger has failed to demonstrate how the jury's view of the crime scene would have added something to his defense. In the absence of any suggestion in this regard, we strongly suspect that counsels' decision, not to ask that the jury be allowed to view the scene, fell within the ambit of reasonable trial strategy, and is therefore not sufficient to support a claim of ineffective assistance. We also note that the questions raised by counsel at trial, and the evidence referenced during argument, indicate that Sullinger's counsel was familiar with the crime scene, either through independent investigation or review of the extensive photographs taken by law enforcement. After reviewing the available photos, we find that the decision to not ask for the jury to be brought to the crime scene was reasonable. The photographs of the crime scene were extensive, and clearly showed the state of the scene at the time of the incident. Sullinger has failed to prove that his counsel was deficient in this regard, or that any prejudice resulted to him.

(d) Failure of Counsel to Use Tape
¶ 22. Next, Sullinger contends that his counsel was ineffective for failing to "introduce the tape which [Sullinger] presented *1073 to counsel before trial, demonstrating that the victim's family had planned to present perjured and false evidence. . . ." The State argues that there is no error on this point because "any use of that tape was clearly part of [counsels'] trial strategy." We agree, and additionally note that this alleged tape was not made a part of the record and is not available for our review on appeal. Without further information on what this tape would have shown, and how its non-production prejudiced Sullinger's defense, we find that Sullinger has not met the Strickland test.

(e) Failure to Introduce Evidence about the Victim

¶ 23. Sullinger argues that his counsel were ineffective for failing "to introduce the record of the victim showing that the victim was an alcoholic and prone for [sic] violence. . . ." We find that this decision falls squarely within the ambit of trial strategy. Additionally, it was brought out through trial testimony that the victim, as well as other key State witnesses, were alcoholics or near-alcoholics. The decision of trial counsel to not discuss any violent incidents of the victim may very well have been predicated upon the fact that any violent propensities of Sullinger could then be brought out by the State. In short, this was a trial strategy decision, and Sullinger has failed to show that his counsel was deficient in this regard, or that his defense was prejudiced.

(f) Failure to Present Evidence about Victim's Intoxication
¶ 24. Finally, Sullinger argues that his counsel was ineffective for failing "to present the viable defense that the victim voluntarily intoxicated himself to the point that he was unable to control his actions. . . ." Sullinger basically appears to argue that his counsel should have presented more evidence regarding Sullinger's self-defense claim. Our review of the record indicates that evidence as to the victim's intoxicated or hung-over state was presented, and that evidence regarding any alleged knife and threatening actions by the victim was produced. It is unclear to us from Sullinger' argument what more he would have had his counsel do in this regard. Therefore, we find that Sullinger has proved neither that his counsel was deficient, nor that he was prejudiced by any deficiency.
¶ 25. As a result, we find that the aid given by Sullinger's trial counsel was effective and presents no basis for reversal on appeal. Sullinger's fourth allegation of error is rejected.

(5) Appeal Counsel
¶ 26. In his fifth allegation of error, Sullinger alleges that he is entitled to relief because he "was denied his Sixth Amendment right to counsel when [the] trial court dismissed Appellant's attorney and failed to appoint new counsel. . . ." He argues that he never made an official waiver of appellate counsel on the record. The State argues that Sullinger is not entitled to relief on this point because he was appointed appeal counsel. The record reflects that the court below appointed Sullinger appeal counsel, whom he later fired. The record also reflects that Sullinger filed a motion asking that the brief filed by the terminated appellate counsel be stricken. That motion was granted by this Court.
¶ 27. We agree with the State that Sullinger is not entitled to any relief. Regardless of whether Sullinger made an official waiver of appellate counsel on the record, he clearly asked that his appellate counsel be withdrawn, knowing that the result of that decision was that he would have to hire counsel himself or proceed pro se. Quite simply, Sullinger cannot request, on the one hand, that his appointed appellate counsel be terminated and claim, *1074 on the other hand, that he was denied his Sixth Amendment right to counsel. We find no error on this point.

(6) Cumulative Error
¶ 28. In his final allegation of error, Sullinger contends that the cumulative errors in his trial resulted in a denial of his constitutional right to a fair trial. The Mississippi Supreme Court has clarified appellate review of cumulative error to specify that errors, which are not reversible in and of themselves, may still require reversal under cumulative error "because of the resulting cumulative prejudicial effect." Byrom v. State, 863 So.2d 836, 847(¶ 13) (Miss.2003).
¶ 29. Since we have found no error in any of Sullinger's other assertions, there can be no cumulative error or cumulative prejudicial effect. Further, "[a]s there was no reversible error in any part, so there is no reversible error to the whole." McFee v. State, 511 So.2d 130, 136 (Miss. 1987). Therefore, Sullinger's final allegation of error is rejected.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THIS SENTENCE RUNNING CONCURRENTLY WITH THE SENTENCE BEING SERVED IN CAUSE NO. CR 2000-59-R(D), IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The State urges us to find that we do not even need to determine whether the evidence was sufficient, because "the argument as presented in [Sullinger's] brief, does not even raise some a [sic] claim as to what facts were deficient." Although we recognize that Sullinger's brief certainly could have contained a more substantial argument, we address the sufficiency of the evidence in his case out of an abundance of caution. Sullinger did correctly cite relevant Mississippi case law, even if his brief lacked more information. In short, there is enough information to allow us to rule on this issue.
[2] The officers who testified maintained that there was no knife present at the scene when they investigated. Instead, the knife was found in plain view on the porch about a week later, after Sullinger's girlfriend called police to tell them the knife was there.