Argued and submitted September 9, 2021, reversed and remanded
March 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD WILLIAM BANKS,
*Defendant-Appellant.*

Umatilla County Circuit Court
19CR35114; A172569

507 P3d 787

Defendant appeals his conviction for driving under the influence of intoxicants. He assigns error to the trial court's exclusion of lay witness testimony offered to rebut allegations about defendant's behavior at the scene of an accident. The state primarily contends that any error in excluding the testimony was harmless, arguing that the testimony was otherwise inadmissible as lay witness testimony because defendant's offer of proof failed to establish that such testimony would be "helpful" to the jury, as required by OEC 701. *Held*: The trial court erred in excluding the disputed testimony on the basis that it was scientific evidence under OEC 702. Further, under OEC 701, that lay witness testimony could have been helpful to the understanding of a fact in issue—defendant's level of intoxication—and the trial court's error was therefore not harmless.

Reversed and remanded.

Christopher R. Brauer, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

DeVORE, S. J.

Reversed and remanded.

_____
* Pagán, J., *vice* DeHoog, J. pro tempore.

**DeVORE, S. J.**

Defendant appeals his conviction for driving under the influence of intoxicants (DUII), ORS 813.010.[1] He assigns error to the trial court's exclusion of lay witness testimony offered to rebut allegations about defendant's behavior at the scene of an accident. We agree that the trial court erred in concluding that the proffered evidence was scientific in nature under OEC 702. Because the error was not harmless, we reverse.

When we review a trial court's evidentiary ruling, we do so in light of the record before the court at the time of that ruling. *State v. Eatinger*, 298 Or App 630, 632, 448 P3d 636 (2019). When evaluating whether the exclusion of that evidence was harmless, we consider all pertinent parts of the record. *Id.* The dispositive facts—for the limited purpose of this appeal—are undisputed.

In July 2018, Pendleton police officers were dispatched to the scene of a hit-and-run accident that damaged a parked car and trailer. When Sergeant Reddington arrived, defendant and other people stood near the damaged car. Reddington spoke with defendant. Defendant first told Reddington that he had seen the crash through his rearview mirror while driving by. Defendant told Reddington that the suspect was driving a "Dodge Cummins diesel pickup towing a trailer." Reddington noticed that defendant's answers were inconsistent, his speech was thick and slurred, and he was unsteady on his feet. When asked more, defendant told Reddington that he himself had been driving a "Dodge Cummins." Defendant asked to return to his car to get water because his mouth was dry. Reddington accompanied defendant on the walk to defendant's parked Dodge Cummins diesel truck and attached trailer. Reddington observed damage to the truck that he suspected had resulted from the accident.

Defendant then acknowledged that he had been involved in the crash but said that he had not been drinking.

---

[1] Since defendant was charged, ORS 813.010 has been amended; however, because those amendments do not affect our analysis, we refer to the current version of the statute.

He told Reddington that he had taken an aspirin, heart medication, cyclobenzaprine, and gabapentin that morning, but denied taking any narcotics that day. When asked if he had ever suffered a head injury, defendant told Reddington that he had been in some bad car accidents. Defendant added that he had balance problems and "wobbled here and there" but did not know why. During the conversation, Reddington noticed that defendant continuously yawned; when asked about that, defendant attributed the yawning to getting only a few hours of sleep. Reddington also noticed that defendant's pupils appeared to be dilated and that his eyes did not react much to immediate light.

Defendant agreed to take a field sobriety test, which was recorded through Reddington's dash cam. Defendant did not exhibit horizontal gaze nystagmus (HGN), or involuntary jerking of the eyes, but he exhibited five out of eight possible clues for intoxication during a walk-and-turn test and two out of four possible clues on a one-leg stand test, and he measured time too quickly on a passage-of-time test. Based on that performance and his conversation with defendant, Reddington arrested defendant for DUII. At the police station, a breathalyzer test showed that defendant had a blood alcohol content of 0.00, indicating that he had no alcohol in his system. A drug recognition expert (DRE) tested defendant and determined that he was under the influence of a narcotic analgesic and a depressant. Defendant's urine sample later tested positive for two controlled substances: hydrocodone (known as Vicodin) and zolpidem (known as Ambien).

Prior to trial, the state filed a motion *in limine* that sought to exclude the testimony of defendant's lay witnesses, *i.e.*, his wife and children, that defendant had experienced syncopal episodes—a medical condition characterized by a loss of muscle control and consciousness. The state objected that such testimony "is a scientific assertion that must be established through an expert." At the pretrial hearing, the state argued exclusively that the testimony should be excluded because lay witnesses cannot testify about a medical diagnosis of "synaptic [*sic*] episodes." Defendant responded that he was not offering any scientific evidence, but just the personal observations of his wife and children

that "they have observed him act in this particular manner in the past, and then he's indicated afterwards no recollection of what occurred during [the episodes.]" Defendant stressed that the witnesses would not "offer any medical diagnosis" or "use any big, fancy words" but would "simply tell the jury what they personally have observed in the past regarding [defendant] and his behavior" and compare that to defendant's behavior that they observed when watching the dash cam footage. Based on those arguments, the trial court granted the state's motion *in limine* and "relie[d] on and adopt[ed] as well taken the state's *** arguments, points, authorities, and logic, as expressed in its motion ***." The state did not offer other objections, and the trial court did not offer any other basis for its ruling.[2]

The next day, defendant made an offer of proof to preserve for appeal what the lay witnesses' testimony would have been if allowed. That offer consisted of testimony from defendant's wife, who testified that, in the 17 years the couple had resided together, she had observed him having "episodes where he is awake and acting and doing stuff, but later has no recollection of what occurred[.]" She testified that those episodes had happened three or four times over the years, that the episodes mirrored the behavior of defendant in the video of his field sobriety test, and that, during those episodes, he "wasn't normal." When asked whether, to her personal knowledge, defendant had "been working with his doctor to determine the origin and cause" of the incidents, defendant's wife answered "yes."

At trial, the state presented evidence from a toxicologist, who confirmed that defendant's urine had tested positive for hydrocodone and zolpidem but allowed that those tests did not confirm the amount of those substances in defendant's system or when he took them. The toxicologist testified that those drugs could be detected from one to

---

[2] Defendant was discouraged from clarifying that ruling at the hearing because, after attempting to ascertain the specific topics to which lay witnesses could testify, the trial court cautioned defendant's counsel to not "parse" the court's ruling and that

"[i]f you violate the order of the court, and you're parsing this information and this order, I will hold you personally accountable and responsible, and if I have to declare a mistrial, you will be responsible for the cost of the trial."

three days after use, while only affecting the user for four to eight hours.

Defendant presented Trace Schreiner, a former police officer and DRE instructor, as an expert witness. Schreiner testified regarding the symptoms he would expect a suspect to display if under the effect of depressants and narcotic analgesics, including nystagmus, a normal body temperature, and a slower pulse. In his closing argument, defendant used Schreiner's testimony to argue that defendant did not display symptoms that a person under the influence of the alleged medications would have displayed. Therefore, defendant argued, he was not impaired by a controlled substance, that he was "tired and impaired by a lack of sleep," and that his performance on some field sobriety tests was impaired by previous injuries.

On appeal, defendant argues that the trial court erred in excluding, as impermissible scientific evidence under OEC 702, the lay witness testimony regarding defendant's past episodes of memory loss and behavior similar to that he exhibited during the field sobriety test.[3] Defendant argues that that error was not harmless because the state relied on defendant's physical symptoms to argue that he was under the influence of narcotics.

The state does not pursue on appeal its objection below—that the contested evidence was impermissible scientific evidence. Instead, the state makes two belated arguments. For the first time on appeal, the state argues that the disputed testimony was inadmissible as lay witness testimony because defendant's offer of proof failed to establish that such testimony would be "helpful" to the jury, as required by OEC 701. That rule provides:

"If the witness is not testifying as an expert, testimony of the witness in the form of opinions or inference is limited to those opinions or inference which are:

_____

[3] As provided by OEC 702,

"[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

> "(1)   Rationally based on the perception of the witness; and
>
> "(2)   Helpful to a clear understanding of testimony of the witness or the determination of a fact in issue."

OEC 701. Specifically, the state argues that defendant's wife did not testify whether defendant's past behavior occurred after he had taken his prescription medication, and, as a result, her testimony was "unhelpful" because, absent comparative background on those earlier episodes, her testimony was "irrelevant to the purpose for which it was offered."

Alternatively, the state argues that the offer of proof was imperfect. *See State v. Tiner*, 340 Or 551, 557, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007) (when a single offer of proof contains both admissible and inadmissible evidence, it is not error to reject the entire offer). The state argues that the disputed testimony included the statement of defendant's wife that defendant had sought medical attention as a result of the episodes of odd behavior. The state suggests that the testimony may have been hearsay because the testimony purportedly did not specify whether defendant's wife had personal knowledge about her husband seeking medical attention. The state reasons that, because the disputed testimony may be at least partially flawed, any error in excluding part of the testimony as impermissible scientific evidence is not error.

We review the trial court's exclusion of lay witness testimony for errors of law. *State v. Barnes*, 208 Or App 640, 648, 145 P3d 261 (2006).

As an initial matter, we conclude that the trial court erred in excluding the disputed testimony on the basis that it was scientific evidence under OEC 702. The Oregon Supreme Court has explained that evidence is "scientific" so as to require a foundational showing of scientific validity under OEC 702 when it (1) is expressly presented to the jury as scientifically grounded; (2) draws its convincing force from some principle of science; or (3) implies a grounding in the methods and procedures of science and would therefore likely be perceived by the jury as imbued with the persuasive appeal of science. *State v. Henley*, 363 Or 284, 301,

422 P3d 217 (2018). In determining whether evidence is scientific, Oregon courts have considered the content of a witness's testimony, the manner in which the witness is presented to the factfinder, and the relationship between the witness's conclusions and the witness's expertise. *Brenner v. Nooth*, 283 Or App 868, 878, 391 P3d 947, *rev den*, 361 Or 671 (2017).

As noted, the state does not defend the trial court's ruling that the testimony of defendant's family should have been considered "scientific" evidence under that standard. Considering the record at the time of the trial court's decision, defendant was not presenting the witnesses to testify about a specific diagnosis or the scientific principles underlying a diagnosis of a specific condition. Where a witness is testifying, not from the perspective of a physician who diagnosed a patient, but from perspective of an observer describing a person's appearance exclusively in terms of their own experience with the person, that testimony is not scientific. *State v. Davis*, 351 Or 35, 57, 261 P3d 1197 (2011); *State v. Evensen*, 298 Or App 294, 315, 447 P3d 23, *rev den*, 366 Or 64 (2019). For that reason, the trial court erred in determining that the family's proposed testimony was "scientific" evidence within the meaning of OEC 702. That conclusion brings us to the state's belated objections about lay witness testimony and the offer of proof.

We decline to engage with the state's argument that defendant's wife's testimony would not be "helpful to a clear understanding of testimony or the determination of a fact in issue" within the meaning of OEC 701.[4] The state did not urge that objection in the trial court, and the trial court did not consider that objection on its own motion. The trial court excluded the testimony on the erroneous basis that the testimony was impermissible scientific testimony. On appeal, the state does not explicitly argue that the trial court was "right for the wrong reason," and it does not attempt to show on appeal the prerequisites for applying that rationale to sustain the court's decision. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001)

---

[4] We will return to the issue of "helpfulness" albeit indirectly when we reach the final question of harmless error.

(explaining the right for wrong reason rationale for affirmance). It is the state's burden to establish that the requirements for affirmance on an alternative basis are satisfied. *State v. Carter*, 315 Or App 246, 250, 498 P3d 822 (2021). The state has not done so.[5] Therefore, we do not consider the state's belated objection to lay witness testimony disputing its helpfulness under OEC 701. *See id.* (declining to consider "right for the wrong reason" where state has not attempted to satisfy its burden).

For the same reason, we also reject the state's belated objection that defendant's wife's testimony is inadmissible because "[i]t is not clear" from the record whether she had personal knowledge of defendant's efforts to seek medical care or if that knowledge derived from hearsay statements by defendant. In any event, the record, in fact, indicates that defendant's wife testified that she knew of defendant's efforts to seek medical care based upon her "personal knowledge."

The state also argues—essentially for the same reason it presents as an alternative basis for affirming the trial court's ruling—that any error in excluding the testimony of defendant's wife was harmless. Evidentiary error is not presumed prejudicial and does not require reversal if it is harmless—that is, if it had little likelihood of affecting the verdict. *Henley*, 363 Or at 307. In determining whether a defendant has shown that the error affected a substantial right, we will consider, among other things, whether the evidence was cumulative, how the case was tried, and the extent to which the disputed evidence was or was not emphasized by the parties and central to their theories of the case. *Carter*, 315 Or App at 250. We do not, however, take on the role of factfinder to reweigh evidence or determine if a defendant is guilty. *Id.* We decide whether a trial court's error was harmless in light of all pertinent portions of the record. *Id.*

---

[5] One of those requirements is that the record would not have developed differently below if the state had raised the issue. *Outdoor Media Dimensions, Inc.*, 331 Or at 659-60. It is unlikely that the state could have satisfied that requirement because, had the issue been raised, defendant's witnesses could have offered more background on the other syncopal episodes they had witnessed.

Generally speaking, OEC 701 provides a liberal standard for the admissibility of lay witness testimony. *State v. Davis*, 351 Or 35, 54, 261 P3d 1197 (2011). In this situation, the rule allows for a lay witness to testify to opinions and inferences that are (1) rationally based on the perception of the witness and (2) helpful to the determination of a fact in issue. OEC 701. The state does not dispute the first requirement. As to the second requirement, lay witness testimony has been characterized as helpful where it provided the jury with information that it would not otherwise have had, where it provided a basis for the defendant to impeach the state's expert witness, and where it provided evidence from which a jury could infer the defendant's mental state or level of intoxication. *State v. Tucker*, 315 Or 321, 341, 845 P2d 904 (1993) (Unis, J., concurring); *State v. Clark*, 286 Or 33, 43, 593 P2d 123 (1979); *Barnes*, 208 Or App at 651.

Viewing the record as a whole, we recognize that defendant's wife's testimony could have helped the jury in each of those ways. Defendant was offering his wife's testimony to support his theory that he was not under the influence of the alleged medications at the time of his field sobriety tests. Such testimony could have offered a different perspective on defendant's level of intoxication, which has long been recognized as within the relevant purview of a lay witness. *See Barnes*, 208 Or App at 649 (explaining that Oregon case law has long recognized that lay opinion is admissible to prove the inverse—that a person is intoxicated).

That testimony would have related to the evidence that defendant presented at trial. Defendant called an expert DRE and used his testimony to argue that defendant's medications would have caused different effects than those observed during the field sobriety tests. Defendant argued that his poor performance on some of the tests could have been caused by a lack of sleep or prior injuries. Testimony from his family could have indicated that a preexisting condition or something other than those medications caused his poor performance. That is to say, the family's testimony could have been helpful to the understanding of a fact in issue— defendant's level of intoxication—supporting defendant's

theory of events and offering rebuttal of the state's expert witness.[6]

Therefore, we conclude that the trial court erred when excluding defendant's wife's testimony as impermissible expert testimony and that the error was not harmless. Accordingly, we reverse and remand.

Reversed and remanded.

---

[6] To the extent that the state insists that defendant's wife did not provide enough information to know how to compare earlier episodes, that is an argument about persuasiveness appropriate for the consideration of a jury, not a concern of admissibility, nor a basis to deny substantial prejudice from an erroneous exclusion of evidence. *Cf. State v. Lerch*, 296 Or 377, 385-86, 677 P2d 678 (1984) (explaining that the weight of a witness's testimony is distinct from its admissibility).